Filed 3/27/23  P. v. Alvarez CA2/3

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE, | B315485 |
| Plaintiff and Respondent, | Los Angeles County Super. Ct. No. B350976 |
| v. | |
| RAFAEL ALVAREZ, | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County.  Kerry Bensinger, Judge.  Reversed and remanded with instructions.

John P. Dwyer, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Charles S. Lee and Theresa A. Patterson, Deputy Attorneys General, for Plaintiff and Respondent.

_____

Defendant and appellant Rafael Alvarez appeals from the superior court's order denying his petition for resentencing under Penal Code section 1172.6.[1] In light of changes to the governing statute that took effect after the trial court denied Alvarez's petition, the record before us does not conclusively establish that Alvarez is ineligible for relief as a matter of law. Accordingly, we reverse and remand for further proceedings.

## BACKGROUND

**1.    *The shooting, charges, verdict, and sentence***

In his opening brief, Alvarez takes his summary of facts from this court's 2012 opinion affirming his conviction on direct appeal, *People v. Alvarez* (May 24, 2012, B227279) [nonpub. opn.] (*Alvarez I*).[2]

On the night of December 31, 2008, Wendy Cervantes went to Amy Contreras's apartment. They were planning to attend a New Year's Eve party with David Mendez. Cervantes had invited her ex-boyfriend Christopher Ruiz to the party. (*Alvarez I*.)

---

[1]    References to statutes are to the Penal Code. Effective June 30, 2022, former section 1170.95 was renumbered section 1172.6 with no change in the text. (Stats. 2022, ch. 58, § 10.)

[2]    While Alvarez recites "the prosecution case" as "summarized" in *Alvarez I*, he does not concede those facts are true. As Alvarez notes—and as we discuss below—the law now prohibits trial courts from using the facts, or a substantial evidence finding, from a prior appellate decision to conclude beyond a reasonable doubt that a petitioner is not entitled to resentencing under section 1172.6. We recite the facts from *Alvarez I* here not for their truth but for the basis of Alvarez's conviction. (See *People v. Woodell* (1998) 17 Cal.4th 448, 459-460.)

2

Ruiz arrived at Contreras's apartment in a Lexus; Alvarez was driving. Cervantes told Ruiz she was waiting for Mendez to arrive. Ruiz said he and Alvarez would come back. (*Alvarez I*.)

Mendez arrived at Contreras's apartment shortly thereafter in a Nissan. Contreras got into the Nissan while Cervantes waited for Ruiz and Alvarez to return. Alvarez drove up a few minutes later. Ruiz was now in the back seat with two other men; a third man was sitting in the front passenger seat. Cervantes approached the Lexus and told Ruiz to follow Mendez's Nissan because she didn't know where the party was. Someone in the Lexus asked if Mendez belonged to a gang. Cervantes said he didn't. (*Alvarez I*.)

Cervantes got back in the Nissan. Mendez stopped for a red light and Alvarez pulled up right behind him. While they were waiting for the light to change, Mendez asked if the men in the Lexus were gang members. Contreras said Alvarez was from Temple Street. Mendez said, " '[W]e don't get along with Temple Street.' " Cervantes knew Mendez was planning to pick up a friend who belonged to the Mara Salvatrucha gang, so she got out and walked back to the Lexus. She asked Ruiz not to " 'start any problems,' " because Mendez was going to pick up " 'a homie from M.S.' " Ruiz replied they " 'weren't going to start any problems because it was New Year's.' " (*Alvarez I*.)

Cervantes got back in the Nissan. Three or four seconds later, Alvarez pulled the Lexus up right next to the driver's side of the Nissan and stopped. The man in the front passenger seat of the Lexus pointed a gun out the window and fired four or five shots, hitting Mendez twice. One of the shots was fatal. The Lexus sped off. (*Alvarez I*.)

The People charged Alvarez with Mendez's murder. They alleged a principal used and discharged a firearm causing death and that Alvarez committed the crime for the benefit of or in association with a gang. The People also alleged Alvarez had a prior strike for criminal threats. At trial, Alvarez contended he was "merely . . . an innocent driver with no idea that one of his passengers was planning to commit a drive-by shooting." (*Alvarez I*.)

The trial court instructed the jury on murder with malice aforethought, degrees of murder, and direct aiding and abetting. The court did not instruct the jury on felony murder or the natural and probable consequences doctrine. The jury found Alvarez not guilty of first degree murder but guilty of second degree murder. The jury also found true the firearm and gang allegations.

In a bench trial, the court found Alvarez's prior strike true. The trial court sentenced him to 60 years to life, calculated as 15 years to life for the murder, doubled because of the strike, plus 25 years for the firearm,[3] plus five years for the serious felony prior under section 667, subdivision (a)(1). On appeal, Alvarez contended the evidence was insufficient to prove he aided and abetted the murder. (*Alvarez I*.) Another panel of this court rejected that contention. The court noted, "by pulling up alongside the Nissan at the stoplight, Alvarez enabled the gunman to get a clear shot at the victim"; he had a motive for facilitating the crime (Mendez had some connection with

---

[3] On direct appeal we ordered the abstract of judgment corrected to reflect the sentence on the firearm enhancement was 25 years to life, not 25 years. (*Alvarez I*.)

4

Mara Salvatrucha); and his "immediate post-shooting conduct, i.e., fleeing the crime scene at high speed, demonstrated consciousness of guilt." (*Alvarez I*.)

**2.** ***Alvarez's resentencing petition***

After Senate Bill No. 1437 (2017-2018 Reg. Sess.) (Senate Bill 1437) took effect, Alvarez filed, on November 17, 2020, a petition for resentencing under section 1172.6. On a downloadable form, Alvarez checked boxes stating an information had been filed against him that allowed the prosecution to proceed under a theory of felony murder or murder under the natural and probable consequences doctrine; he had been convicted at trial "of 1st or 2nd degree murder pursuant to the felony murder rule or the natural and probable consequences doctrine"; he "could not now be convicted of 1st or 2nd degree murder because of changes made to Penal Code §§ 188 and 189"; and he "was convicted of 2nd degree murder under the natural and probable consequences doctrine or under the 2nd degree felony murder doctrine and [he] could not now be convicted of murder because of changes to Penal Code § 188 . . . ." Alvarez also checked the box asking the court to appoint counsel for him.

The trial court appointed counsel for Alvarez. On May 18, 2021, the district attorney filed a response to Alvarez's petition. The prosecution opposed the petition because Alvarez's "jury was not instructed under either felony murder or natural and probable consequences theories of culpability" and he therefore was "ineligible for relief" "[a]s a matter of law." The prosecution attached to its brief a copy of *Alvarez I* and copies of some of the jury instructions given at Alvarez's trial. The instructions included CALCRIM No. 400 ("Aiding and Abetting: General Principles") and No. 401 ("Aiding and Abetting: Intended

5

Crimes"). CALCRIM No. 402 ("Natural and Probable Consequences Doctrine (Target and Non-Target Offenses Charged)") and No. 403 ("Natural and Probable Consequences (Only Non-Target Offense Charged)") were not included.

On June 17, 2021, Alvarez—through counsel—filed a reply. Alvarez "concede[d] that his jury was not instructed with the CALCRIM felony murder series of instructions." However, Alvarez contended "his jury was instructed with the natural and probable consequences theory of liability" in three instructions: CALCRIM No. 520 ("Murder with Malice Aforethought (Pen. Code, § 187)"), No. 521 ("Murder: Degrees (Pen. Code, § 189)"), and No. 1402 ("Gang-Related Firearm Enhancement (Pen. Code, § 12022.53(e))").[4] Alvarez argued he therefore "was convicted of second degree murder on the basis of imputed malice aforethought."

Counsel appeared before the court on June 30, 2021. The court had asked counsel to have read and be prepared to discuss *People v. Soto* (2020) 51 Cal.App.5th 1043 (*Soto*). Defense counsel began to talk about a "target offense" of "[s]hooting a firearm from a motor vehicle at somebody outside the vehicle with the intent to kill." Counsel asserted Alvarez had to show only that he *could* have been prosecuted under the natural and probable consequences doctrine, not that he in fact was. The court disagreed. Confusing this case with a felony murder case, defense counsel argued that—as the jury had acquitted Alvarez of first degree murder—"then the prosecution ha[d] to put on

---

[4]    The current versions of CALCRIM Nos. 520 and 521 have slightly different titles.

6

evidence to prove that he was a major participant and that he acted with reckless indifference to human life."

In response to a question by the court, counsel conceded that—even after Senate Bill 1473—a defendant could "still be convicted of second degree murder . . . based upon implied malice" (contrary to the argument he'd made in his brief). Citing *Soto*, the court then asked, "So why wasn't the jury instructed properly in this case . . . as a direct aider and abettor with implied malice?" Counsel said the facts were different in *Soto*. Counsel argued that, to establish a prima facie case, Alvarez had to show only "that there [was] a possibility that he could succeed." The court offered counsel an opportunity to brief *Soto* but counsel declined.

On July 8, 2021, the trial court issued a Memorandum of Decision denying Alvarez's petition. The court took its statement of facts from *Alvarez I*. As our Supreme Court had not yet decided *People v. Lewis* (2021) 11 Cal.5th 952 (*Lewis*), the court followed the two-step prima facie case procedure set forth in *People v. Verdugo* (2020) 44 Cal.App.5th 320, 327-328. While acknowledging the court could not engage in " 'factfinding involving the weighing of evidence' " before issuing an order to show cause, the court stated the second " 'stage of review' " for a prima facie case—a determination of eligibility—"require[d] an assessment of the evidence concerning the commission of the petitioner's offense."

The court continued, " 'In this [second] stage, the trial court must evaluate . . . whether the facts and circumstances of the offense(s) prevent the petitioner from making "a prima facie showing that he or she is *entitled* to relief." ' " The court noted "the Court of Appeal affirmed Alvarez's second degree murder

7

conviction because he aided and abetted the murder." Citing cases, the court stated it could " 'look to the record of conviction, including the court file and the opinion from the petitioner's original appeal from his or her conviction.' "

Moreover, the court said, "[T]he jury instructions confirm that Alvarez was not convicted based upon the felony murder rule or the natural and probable consequences doctrine." The court concluded, "Because Alvarez was convicted as an aider and abettor and not based on the natural and probable consequences doctrine or the felony murder rule, he is not eligible for relief."

### 3. *Alvarez's appeal*

Alvarez appealed and we appointed counsel to represent him on appeal. After examining the record, counsel filed an opening brief raising no issues and asking this court independently to review the record under *People v. Wende* (1979) 25 Cal.3d 436.[5] However, while Alvarez's appeal was pending, the Legislature passed Senate Bill No. 775 (Stats. 2021, ch. 551, § 2) (Senate Bill 775). That legislation made a number of significant changes to the governing statute. Accordingly, we vacated submission of the case and asked counsel to brief the effect—if any—of Senate Bill 775 on this appeal.

### DISCUSSION

### 1. *Senate Bills 1437 and 775, and our standard of review*

Senate Bill 1437 took effect on January 1, 2019. (See Stats. 2018, ch. 1015, § 4.) It limited accomplice liability under the felony-murder rule and eliminated the natural and probable

---

[5] Counsel filed the brief under *People v. Serrano* (2012) 211 Cal.App.4th 496, but urged us to conduct an independent review of the record for reasonably arguable issues, whether or not Alvarez submitted a supplemental brief.

8

consequences doctrine as it relates to murder, to ensure a person's sentence is commensurate with his or her individual criminal culpability. (*People v. Gentile* (2020) 10 Cal.5th 830, 842-843 (*Gentile*); *Lewis, supra,* 11 Cal.5th at pp. 957, 971.) Effective January 1, 2022, Senate Bill 775 modified the law to "expand the authorization to allow a person who was convicted of murder under any theory under which malice is imputed to a person based solely on that person's participation in a crime . . . to apply to have their sentence vacated and be resentenced." (Stats. 2021, ch. 551.)

To seek resentencing under section 1172.6, an offender must file a petition in the sentencing court stating (as relevant here), under penalty of perjury, (1) the People filed an information that allowed the prosecution to proceed under a theory of felony murder, the natural and probable consequences doctrine, or another theory under which malice is imputed to a person based solely on that person's participation in a crime; (2) the petitioner was convicted of murder; and (3) he could not now be convicted of murder because of changes to section 188 or 189. (§ 1172.6, subd. (a)(1)-(3); see also *id.*, subd. (b)(1)(A).)

If the petition contains all the required information, the court must appoint counsel to represent the petitioner, if requested; direct the prosecutor to file a response to the petition and permit the petitioner to file a reply; and determine if the petitioner has made a prima facie showing that he is entitled to relief. (§ 1172.6, subds. (b)(3), (c); *Lewis, supra,* 11 Cal.5th at pp. 959-960.)

In determining whether the petitioner has carried the burden of making the requisite prima facie showing he falls within the provisions of section 1172.6 and is entitled to relief,

9

the trial court properly examines the record of conviction, "allowing the court to distinguish petitions with potential merit from those that are clearly meritless." (*Lewis*, *supra*, 11 Cal.5th at p. 971.) However, "the prima facie inquiry under [section 1172.6,] subdivision (c) is limited. Like the analogous prima facie inquiry in habeas corpus proceedings, ' "the court takes petitioner's factual allegations as true and makes a preliminary assessment regarding whether the petitioner would be entitled to relief if his or her factual allegations were proved. If so, the court must issue an order to show cause." ' " (*Ibid*.) The court then holds an evidentiary hearing at which the prosecution has the burden of proving beyond a reasonable doubt that the petitioner is ineligible for resentencing. (§ 1172.6, subd. (d)(3).)

Senate Bill 775 amended section 1172.6 in various respects.[6] Section 1172.6, subdivision (d)(3) now provides the admission of evidence at the hearing "shall be governed by the Evidence Code, except that the court may consider evidence previously admitted at any prior hearing or trial that is admissible under current law, including witness testimony, stipulated evidence, and matters judicially noticed." The statute continues, "The court also may consider the procedural history of the case recited in any prior appellate opinion." Further, "The prosecutor and the petitioner also may offer new or additional

---

[6] Appellate courts in this district and elsewhere have held the new amendments to section 1172.6 apply retroactively to appeals from the denial of petitions not yet final as of January 1, 2022. (*People v. Perez* (2022) 78 Cal.App.5th 192, 204-205, review granted Aug. 17, 2022, S275090; *People v. Porter* (2022) 73 Cal.App.5th 644, 652; *People v. Montes* (2021) 71 Cal.App.5th 1001, 1006-1007.)

evidence to meet their respective burdens.  A finding that there is substantial evidence to support a conviction for murder . . . is insufficient to prove, beyond a reasonable doubt, that the petitioner is ineligible for resentencing."  (§ 1172.6, subd. (d)(3).)

We review de novo whether the trial court properly denied Alvarez's petition without issuing an order to show cause. (*People v. Coley* (2022) 77 Cal.App.5th 539, 545.)

## 2. *Alvarez is entitled to an evidentiary hearing*

Alvarez contends "[t]he record of conviction does not conclusively refute [his] allegation that his murder conviction was based on imputed malice."  He also asserts "the trial court denied the petition because the Court of Appeal held there was substantial evidence to support Alvarez's conviction as a direct aider and abettor."  He notes that, after Senate Bill 775, this sort of reliance on "substantial evidence" is impermissible.

The Attorney General concedes that—even though the trial court never used the words "substantial evidence"—its "alternate justification for finding [Alvarez] ineligible for relief as a matter of law" was based on the *Alvarez I* court's "finding on direct appeal that there was substantial evidence to support [Alvarez's] conviction for second degree murder under a direct aiding and abetting theory."  Accordingly, the Attorney General says, he does not rely on that ground.  However, the Attorney General argues, "[t]he record of conviction conclusively demonstrates that [Alvarez] is ineligible for relief as a matter of law" because his jury was not instructed on felony murder, the natural and probable consequences doctrine, or "any other possible theory of imputed malice."

Alvarez seems not to dispute that direct aiding and abetting implied malice murder remains a valid theory of liability

11

for second degree murder.  (*People v. Vargas* (2022) 84 Cal.App.5th 943, 954-955; *People v. Schell* (2022) 84 Cal.App.5th 437, 443-444; *People v. Vizcarra* (2022) 84 Cal.App.5th 377, 388-392; *People v. Glukhoy* (2022) 77 Cal.App.5th 576, 588-590, review granted July 27, 2022, S274792; *People v. Powell* (2021) 63 Cal.App.5th 689, 711-714 (*Powell*).  See *Gentile, supra,* 10 Cal.5th at p. 850 [aider and abettor who does not expressly intend to aid a killing can still be convicted of second degree murder if he knows his conduct endangers another's life and acts with conscious disregard for life]. Cf. *People v. Superior Court (Valenzuela)* (2021) 73 Cal.App.5th 485, 499 ["an aider and abettor who acts with implied malice can be guilty of murder entirely apart from the natural and probable consequences doctrine," citing *Gentile* and *Powell*].)

Citing *People v. Langi* (2022) 73 Cal.App.5th 972 (*Langi*), however, Alvarez asserts "the interplay of the instructions on second-degree murder and aiding and abetting created the possibility that the second-degree murder conviction impermissibly rested on a finding of imputed malice rather than on a finding that Alvarez personally harbored malice." The Attorney General responds that *Langi* is distinguishable, and that there was no ambiguity in the jury instructions given at Alvarez's trial.

*Langi* may well be distinguishable.  If the facts set forth in *Alvarez I* are accurate, then this case is very different from *Langi*.  There, Langi and three other men beat and robbed the victim.  Someone in the group of four punched the victim, who fell and hit his head, leading to his death.  (*Langi, supra,* 73 Cal.App.5th at p. 975.)  The appellate court noted "the record

as a whole [left] room to question" who "threw the fatal punch." (*Id.* at p. 980.)

The *Langi* court cited *Powell.* (*Langi, supra,* 73 Cal.App.5th at pp. 982-983.) In that case, defendants Powell and Langlois, together with two other men, went into the victim's home and beat him in retaliation for beating their friend. The victim died after being stabbed in the heart. The prosecution contended Powell stabbed the victim and Langlois hit the victim with a coffee table. (*Powell, supra,* 63 Cal.App.5th at pp. 691-693, 696-697.) The court instructed the jury on direct aiding and abetting as well as the natural and probable consequences doctrine. (*Id.* at pp. 706-707.) The jury convicted both Powell and Langlois of second degree murder. (*Id.* at pp. 705-706.)

In his closing argument in *Powell,* the prosecutor told the jury Langlois could be guilty of murder even if he intended only to participate in an assault, if "he went over there with the intent to inflict violence." (*Powell, supra,* 63 Cal.App.5th at pp. 708-709.) The *Powell* court concluded, given the facts of the case, the trial court should have "tailored" the jury instructions, but its failure to do so was harmless. (*Id.* at p. 714.)

Here, by contrast, the prosecution contended Alvarez, only seconds after hearing the victim was " 'going to pick up a homie from M.S.,' " pulled the Lexus he was driving right up to the driver's side of the victim's car and stopped. The man in the front passenger seat of Alvarez's car pointed a gun out the window and fired four or five shots, killing the victim. In other words, the life-endangering act here was not a physical assault but the discharge of a firearm, at very close range, directly at the driver of a car immediately next to the car Alvarez was driving. Accordingly, these facts—if proved beyond a reasonable doubt—

13

could establish the elements of implied malice second degree murder: that Alvarez (the aider and abettor), by his conduct, aided the commission of the shooting, with knowledge the perpetrator intended to commit the shooting, and the intent to aid the perpetrator in the commission of the shooting, while acting in conscious disregard for human life. (*People v. Vizcarra, supra,* 84 Cal.App.5th at pp. 389-390, citing *Powell, supra,* 63 Cal.App.5th at p. 713.)

But here's the problem: Neither the prosecutor nor Alvarez's counsel presented the trial court with trial transcripts or any other materials except for the *Alvarez I* opinion and the jury instructions. The trial court relied on the facts stated in *Alvarez I* in summarily denying Alvarez's petition. We do not fault the trial court; it relied on the applicable law at the time, in July of 2021.[7] However, after Senate Bill 775, courts no longer are permitted to rely on an appellate opinion's factual summaries and conclusions to determine a petitioner's eligibility for resentencing. As we noted, section 1172.6, subdivision (d)(3), as revised, now permits the court to consider "the *procedural history* of the case recited in any prior appellate opinion." (§ 1172.6, subd. (d)(3), italics added.) In including this language in Senate Bill 775, the Legislature omitted any reference to the use of fact summaries and conclusions of fact. Accordingly, at least one published case has concluded this omission means trial courts no longer should rely on fact summaries from appellate court

---

[7]     See, e.g., *People v. Williams* (2020) 57 Cal.App.5th 652, 661-663 [holding trial court could consider appellate court's factual summaries in an opinion in the context of section 1172.6 hearings because those summaries were "reliable hearsay"].

opinions at the evidentiary stage of a section 1172.6 proceeding. (*People v. Clements* (2022) 75 Cal.App.5th 276, 292.)

We recognize this language, by its terms, applies to an evidentiary hearing after the court has issued an order to show cause. But that legislative guidance—coupled with the case law emphasizing courts may not engage in factfinding or the weighing of evidence at the prima facie stage[8]—leads us to err on the side of caution here, and return the case to the trial court for further proceedings.

Finally, we acknowledge that the Attorney General's argument based on the jury instructions in this case has considerable merit. As we have said, the court did not instruct Alvarez's jury on felony murder or the natural and probable consequences doctrine. The court gave the jury CALCRIM No. 520, which required the People to prove Alvarez "committed an act that caused the death of another person" and, when he acted, "he had a state of mind called malice aforethought." That instruction further explained one acts with implied malice if he "intentionally committed an act," the "natural and probable consequences of [which] were dangerous to human life,"[9]

---

[8] In conducting its prima facie review, the trial court may not engage in factfinding involving the weighing of evidence or credibility determinations and must assume the truth of all facts stated in the petition. (*Lewis, supra,* 11 Cal.5th at pp. 971-972; *People v. Flint* (2022) 75 Cal.App.5th 607, 612.)

[9] In his brief and at oral argument in the trial court, Alvarez's counsel seemed to be arguing the use of the phrase "natural and probable consequences" in CALCRIM No. 520's definition of implied malice meant Alvarez was prosecuted under the natural and probable consequences doctrine. Counsel was mistaken. In *Soto, supra,* 51 Cal.App.5th 1043, our colleagues

15

knowing, when he acted, "his act was dangerous to human life," and nevertheless acting "deliberately" "with conscious disregard for human life." CALCRIM No. 401, which explained direct aiding and abetting, told the jurors the People had to prove the perpetrator (here, the man in the front passenger seat) committed the crime (shooting Mendez at close range); Alvarez knew the shooter intended to commit the crime (shooting Mendez); "[b]efore or during the commission of the crime [the shooting], [Alvarez] intended to aid and abet the [shooter] in committing the [shooting]"; and Alvarez's "words or conduct did in fact aid and abet the [shooter's] commission of the [shooting]."[10] If the facts summarized in *Alvarez I* are true, then the "crime" for purposes of the aiding and abetting instruction was murder, and only murder. No "tailoring" of the instructions was necessary.

On the record before us, however, we cannot find Alvarez's ineligibility has been conclusively established as a matter of law.

---

in the Sixth District explained the difference between "natural consequences" as used in the definition of implied malice, and the natural and probable consequences doctrine. (*Id.* at p. 1056.) In *Soto*, as here, the defendant was the driver; his fellow perpetrator was the shooter. That case involved CALJIC Nos. 8.11 and 8.31, the predecessors to CALCRIM Nos. 520, 402, and 403. (*Soto*, at pp. 1048-1049.) The *Soto* court noted that, even though the instructions included similar language regarding a " 'natural consequence,' " they were "distinctly different concepts." (*Id.* at p. 1056.)

[10] The Attorney General also relies on CALCRIM No. 521. However, that instruction explains first degree murder. The jury acquitted Alvarez of first degree murder.

16

The prima facie bar for section 1172.6 resentencing petitions
" 'was intentionally and correctly set very low.' " (*Lewis, supra*,
11 Cal.5th at p. 972.)  Given the trial court's reliance on the facts
recited in *Alvarez I,* together with defense counsel's apparent
confusion about the difference between implied malice and
imputed malice, we conclude further proceedings in accordance
with Senate Bill 775's changes to the statute are necessary.

### DISPOSITION

The order is reversed and the matter is remanded to
the trial court.  The court is to issue an order to show cause
and conduct an evidentiary hearing under section 1172.6,
subdivision (d)(3).

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

EGERTON, J.

We concur:

LAVIN, Acting P. J.

NGUYEN (KIM), J.\*

---

\*     Judge of the Los Angeles Superior Court, assigned by the
Chief Justice pursuant to article VI, section 6 of the California
Constitution.

17